UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| THOMAS ANDERSON MARKHAM,<br><br>     Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)  Civil Action Number<br>)  **6:17-cv-01136-AKK**<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

Thomas Anderson Markham brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA").  For the reasons explained below, the court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the final decision of the Commissioner—is supported by substantial evidence.  Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Markham worked as coal miner for eleven years until he stopped working in 2014 at age 48 due to his alleged disability. Docs. 5-4 at 84; 5-8 at 7. Markham filed an application for a period of disability and disability insurance benefits ("DIB") on November 7, 2014, alleging that he suffered from a disability, beginning February 18, 2014 due to problems with his shoulders, diabetic nerve pain, dizziness, and a back impairment. Docs. 5-4 at 57; 5-5 at 3; 5-7 at 2; 5-8 at 6, 25. After the SSA denied his application, Markham requested a hearing before an ALJ, docs. 5-4 at 57; 5-5 at 15; 5-6 at 3, 8, and the ALJ ultimately entered a decision finding that Markham was not disabled, doc. 5-4 at 54. The SSA Appeals Council denied Markham's request for review, rendering the ALJ's decision the final decision of the Commissioner. Doc. 5-3 at 2. Having exhausted his administrative remedies, Markham timely filed this petition for review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the

3

reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that he is disabled, and, "consequently he is responsible for producing evidence in support of his claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV. The ALJ's Decision

In applying the five-step analysis, the ALJ first determined that Markham met the insured status requirements of the Act through December 31, 2019, and that he had "not engaged in substantial gainful activity since February 18, 2014, the alleged onset date" of his disability. Doc. 5-4 at 59. The ALJ proceeded to Step Two of the analysis, finding that Markham had the severe impairments of "degenerative joint disease of the right shoulder, non-insulin dependent diabetes mellitus, and neuropathy . . . ." *Id.* The ALJ also found that Markham suffered from several non-severe impairments, including back and left shoulder impairments and obesity. *Id.* at 60. At Step Three, the ALJ concluded that

5

Markham's severe impairments did not "meet[] or equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." *Id.*

Next, the ALJ determined Markham's residual functional capacity ("RFC"), stating that:

> [Markham] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except occasionally crawl and no climbing of ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; avoid concentrated exposure to temperature extremes and pulmonary irritants; avoid dangerous moving, unguarded machinery and unprotected heights; walking and standing for four hours in an eight-hour workday, with a sit, stand option where work could be done while standing; avoid overhead reaching and pushing/pulling with right upper extremity, which is the non-dominant hand.

Doc. 5-4 at 61. Based on Markham's RFC, and relying on the testimony of a VE, the ALJ found at Step Four that Markham is unable to perform any past relevant work. *Id.* at 65. The ALJ then proceeded to Step Five, where, based on Markham's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Markham] can perform," including laundry worker, information clerk, and storage rental clerk. *Id.* at 66. As a result, the ALJ concluded that Markham was not disabled from the alleged onset date through the date of the ALJ's decision. *Id.* at 66-67.

## V. Analysis

On appeal, Markham argues that the ALJ erred by discounting the opinions of his treating physicians and by finding that Markham's shoulder impairment did not meet or equal Listing 1.02. Doc. 8 at 4, 6, 13. The court addresses Markham's arguments in turn.

### A. Whether the ALJ Erred by Giving Little Weight to the Opinions of Markham's Treating Physicians

Markham argues that the ALJ failed to properly weigh the opinions of his treating physicians. Doc. 8 at 4, 6, 9, 13. The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). The ALJ must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions. *Id.*

Markham contends that the ALJ should have given more weight to opinions contained in "Clinical Assessment of Pain" forms completed by four of his treating

physicians: Drs. Brent Ballard, Jason Hatfield, Gwen Claussen, and Arash Arabi. Doc. 8 at 6, 9, 13.[1] Each form consists of four questions relating to Markham's pain or medication, with typed responses for the physicians to circle. Docs. 5-8 at 55-60; 5-13 at 13-14. In completing the forms, each physician circled responses stating that (1) "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work," (2) physical activity would result in "[g]reatly increased pain [] to such a degree as to cause distraction from task or total abandon[ment] of task," and (3) Markham had an underlying medical condition consistent with the pain he experiences. Docs. 5-8 at 55-60; 5-13 at 13-14. And, each physician signed his or her name below the following typed statement: "Based upon his [] pain and other symptoms, it is my opinion that [] Markham is totally and permanently disabled from doing any substantial gainful employment due to his [] physical condition and all of [his] limitations, including his [] intractable pain." Docs. 5-8 at 56, 58, 60; 5-13 at 14.

The physicians disagreed about the extent to which medication impacts Markham's ability to perform work. Dr. Arabi indicated that Markham would be "totally restricted" and "unable to function at a productive level of work," doc. 5-8 at 58, while the three other physicians indicated that Markham's medication would

---

[1] The ALJ and the parties state that Dr. Patricia Antero, rather than Dr. Arash Arabi, completed a Clinical Assessment of Pain form. Docs. 5-4 at 64; 8 at 6; 9 at 10. The signature on the form at issue is illegible. *See* doc. 5-8 at 58. However, in the administrative record before the court, Markham identifies Dr. Arabi as the physician who completed the form, *see* doc. 5-12 at 23, and Dr. Arabi testified that he completed the form, doc. 5-3 at 63-64.

not have such a severe impact on his functioning. In particular, Dr. Ballard circled the response stating that "[d]rug side effects can be expected to be severe and to limit effectiveness due to [d]istraction, inattention, [d]rowsiness, etc.," doc. 5-8 at 56, and Drs. Claussen and Hatfield agreed that "[s]ome limitations may be present but not to such a degree as to create [s]erious problems in most instances," docs. 5-8 at 60; 5-13 at 14.[2]

The ALJ considered the physicians' opinions, but gave them little or no weight. Doc. 5-4 at 64-65.[3] Markham attacks this decision, arguing that the ALJ erred by basing her decision on her incorrect assumption that Markham's attorney may have paid the physicians to complete the assessment forms. Doc. 8 at 6-9. Markham is correct that evidence he submitted to the Appeals Council establishes that neither Markham nor his attorney paid for the physicians' opinions. *See* docs. 5-3 at 18-96; 5-4 at 3-48. In that respect, the ALJ erred by stating that the physicians may have been paid to generate evidence. The ALJ's error is harmless,

---

[2] In her treating notes dated February 3, 2016, Dr. Claussen states that Markham asked her to change her response to reflect that his medications "seriously affect most people to the point where they cannot function." Doc. 5-14 at 8. Markham "became angry with [Dr. Claussen]" when she told him most people can function on tramadol and gabapentin. *Id.*

[3] The ALJ gave little weight to Dr. Arabi's opinion that Markham's pain prevented work, but she did not specifically state the weight given to the remaining opinions contained in the Clinical Assessment of Pain forms. Doc. 5-4 at 65. However, it is clear from the ALJ's decision that she gave the opinions little to no weight, and the ALJ articulated her reasons for rejecting the opinions. *See id.* at 64-65. Thus, even though the ALJ erred by not stating with particularity the weight given to the opinions, *see Winschel*, 631 F.3d at 1179, the error is harmless because the ALJ had good cause to give no weight to the opinions in the Clinical Assessment of Pain forms.

however, because other evidence supports her decision to give the physicians' opinions little or no weight.

As an initial matter, and as the ALJ noted, the physicians' opinions that Markham is fully disabled and is unable to perform any substantial gainful employment are not medical opinions, but are instead legal issues reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coheley v. Soc. Sec. Admin.*, 707 Fed. Appx. 656, 659 (11th Cir. 2017); *Hutchison v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that an opinion regarding whether a claimant "could hold a job is a vocational opinion, not a medical one" and is a "question reserved to the ALJ"); *see also* doc. 5-4 at 65. As such, while those opinions are relevant evidence, they are not entitled to any weight. *See* 20 C.F.R. § 404.1527(d)(3). Therefore, the ALJ did not err by giving the opinions little or no weight.

Next, the ALJ's decision belies Markham's assertion that the ALJ rejected the opinions primarily because she believed Markham's attorney may have paid the physicians to complete the forms. To the contrary, the ALJ thoroughly discussed the content of the forms before noting that the opinions contained in the forms consist of circled conclusions and that a "treating physician's opinion may be rejected if it is 'so brief and conclusory that it lacks persuasive weight or when it is unsubstantiated by any clinical or laboratory findings.'" Doc. 5-4 at 64-65 (quoting *Hudson v. Hackler*, 755 F.2d 781, 784 (11th Cir. 1985)). Thus, the ALJ's

decision reveals that she rejected the treating physicians' opinions because she found them to be conclusory and unsupported by clinical data, which is indeed good cause for the ALJ to give them no weight. *See Winschel*, 631 F.3d at 1179. In other words, she did not reject the opinions based solely on her incorrect assumption that Markham's attorney may have paid for the opinions.

In addition, the ALJ also had good cause to reject the opinions based upon their substance. As an initial matter, Markham's contention that the physicians' opinions are supported by his medical records and by sworn statements given by the physicians after the ALJ's decision, doc. 8 at 6,[4] is unavailing. The issue before the court is whether substantial evidence supports the ALJ's conclusion, not whether evidence may support a contrary conclusion. *See Martin*, 894 F. 2d at 1529 (citations omitted). More significantly, the physicians' own treating notes are inconsistent with the extent of the physical limitations described in the Clinical Assessment of Pain forms, and those inconsistencies provide good cause to discount the opinions contained in the forms. *See* 20 C.F.R. § 404.1527(c)(3),

---

[4] Markham submitted the physicians' sworn statements to the Appeals Council, but the Council did not consider them because there was not a reasonable probability that the evidence would change the outcome of the ALJ's decision. Doc. 5-3 at 3. On appeal, Markham does not challenge the Appeals Council's decision denying review. *See* doc. 8. Therefore, the court need not consider the physicians' sworn statements. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1265-66 (11th Cir. 2007) ("[W]hen a claimant challenges an [ALJ]'s decision to deny benefits, but not the decision of the Appeals Council to deny review of the [ALJ], we need not consider evidence submitted to the Appeals Council."). However, as mentioned in this Memorandum Opinion, *see* note 6, *infra*, the physicians' statements do not show that the ALJ's decision is not supported by substantial evidence.

(c)(4); *Phillips*, 357 F.3d at 1241 (explaining that good cause to discount a treating physician's opinion is shown when that "opinion was . . . inconsistent with the doctor's own medical records").

First, with respect to the effect of Markham's medications, his medical records contain no indication that he complained to his treating physicians about experiencing side effects, much less that he experienced any debilitating side effects. Docs. 5-9; 5-10; 5-11; 5-12; 5-13; *see also* doc. 5-4 at 63.[5] Next, Dr. Arabi's treating notes reflect that Gabapentin "helps some" with Markham's neuropathy, and at an exam on September 28, 2015 (one week after Dr. Arabi completed the Clinical Assessment of Pain form), Dr. Arabi noted that Markham denied having any difficulty walking and "has down well" with treatment. Doc. 5-13 at 6-10. Additionally, Dr. Claussen's notes show that Markham had only "mild distal polyneuropathy," that a nerve block and gabapentin helped with Markham's pain, and that she discussed "exercise (off feet)" with Markham. Docs. 5-13 at 37-38; 5-14 at 8. Dr. Ballard's notes reflect that Markham's pain is improved with Mobic and ultram. Doc. 5-13 at 26. Finally, Dr. Hatfield's notes reflect that Markham sought treatment in December 2014, months after his alleged onset date, when he strained his back pushing a go-cart and doing "outside work," and Dr.

---

[5] Dr. Claussen's notes reflect that Markham's tinnitus may be a "drug effect." Doc. 5-12 at 31.

Hatfield did not recommend any restrictions on Markham's functioning after his alleged onset date. Docs. 5-8 at 67-68; 5-10 at 3-20; 5-12 at 11, 13. All of these treating notes belie the physicians' assessment of Markham as being incapable of performing any work.[6]

Markham's other medical records are also inconsistent with the limitations described in the assessment forms and support the ALJ's decision. As the ALJ discussed, Dr. Richard Meyer performed two surgeries on Markham's right shoulder to treat pain and immobility. Doc. 5-4 at 62. Markham first had arthroscopic surgery on his right shoulder to repair a torn rotator cuff on March 4, 2014. Doc. 5-9 at 8. After the surgery, Markham developed "frozen shoulder," which required a second surgery to correct on June 16, 2015. Doc. 5-12 at 46-62. Dr. Meyer's notes indicate that Markham had close to normal range of motion in his right shoulder after the second surgery. *Id.* at 63. Based on the record before the court, Markham did not return to Dr. Meyer for treatment after June 18, 2015, which suggests that the second surgery successfully treated Markham's frozen shoulder. *Id.* Moreover, even before Markham's second surgery, Dr. Meyer recommended that Markham use his right arm for light activities and that

---

[6] Nothing in the physicians' sworn statements contradicts their treating notes. *See* docs. 5-3 at 18-95; 5-4 at 3-48. Instead, in their sworn statements, the physicians testify generally that their opinions in the Clinical Assessment of Pain forms are consistent with their diagnoses and treating notes. *Id.*

13

Markham could perform light duty work "below chest height, such as a desk job . . . ." Doc. 5-9 at 12-15.

After Markham's first surgery on his right shoulder, he developed pain and limited range of motion in his left shoulder, and Dr. William Lawrence performed arthroscopic surgery on Markham's left shoulder on January 16, 2015. Doc. 5-11 at 66, 70. Markham's left shoulder pain improved after the surgery, *id.* at 74, and there is no indication that he sought further treatment for his left shoulder. Indeed, in a physical work performance evaluation conducted on October 7, 2015, Markham stated he had pain in right shoulder, but there is no indication he had any pain in his left shoulder. Doc. 5-14 at 28. Based on the work performance evaluation, Dr. Laura Patton, a physical therapist, concluded that Markham could perform a range a medium work, with certain lifting restrictions. *Id.* at 27, 29.

Contrary to Markham's contention, the record contains ample evidence that is contrary to the opinions contained in the Clinical Assessment of Pain forms, and that evidence provides good cause for the ALJ to give the opinions little to no weight. *See Phillips*, 357 F.3d at 1241. To be clear, the record supports Markham's contention that he has suffered from shoulder and arm pain and neuropathic pain in his feet. Relevant here, however, the court is not authorized to substitute its judgment for that of the Commissioner. Instead, so long as the ALJ applied correct legal standards and reached a decision that was both "reasonable

and supported by substantial evidence," the court may not second guess the ALJ's findings. *Martin*, 894 F.2d at 1529. Here, the record indicates that the ALJ had good cause to discount the physicians' opinions and that substantial evidence supports her decision. Accordingly, the ALJ did not err in according little or no weight to the opinions contained in the Clinical Assessment of Pain forms.

    B.    <u>Whether Markham's Shoulder Impairments Medically Meet or Exceed Impairment Listing 1.02</u>

The ALJ found also that Markham's impairments, considered singly or in combination, do not meet the criteria of Listing 1.02, which deals with disorders of a joint. Doc. 5-4 at 60.[7] Markham disagrees with that finding and suggests that his medical records and the testimony of his treating physicians support a contrary finding in his favor. Doc. 8 at 13-15. Once again, however, the issue before the court is whether substantial evidence supports the ALJ's finding, not whether

---

[7] Listing 1.02 involves "Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With:

    A.    Involvement of one major peripheral weight bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

    B.    Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c."

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

evidence may support a contrary finding. *See Martin*, 894 F. 2d at 1529 (citations omitted). Unfortunately for Markham, the record supports the ALJ's decision.

For Markham's impairment to meet Listing 1.02, the impairment "must meet *all* of the specified medical criteria [for the listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original) (citation omitted). Further, for Markham to show that his "unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.* at 531 (citation omitted). Finally, a qualifying impairment "must have lasted or be expected to last for a continuous period of twelve months." *Wilkinson ex rel. Wilkinson*, 847 F.2d at 663. Thus, the physical findings used to establish that the claimed impairment meets or medically equals a listing must persist "over a period of time . . . established by a record of ongoing management and evaluation." 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00D.

Turning to the specifics here, Markham did not offer any evidence that he had a gross anatomical deformity and chronic joint pain and stiffness in any major peripheral weight-bearing joint. *See* docs. 5-9; 5-10; 5-11; 5-12; 5-13; 5-14. Moreover, he did not offer evidence that he could not "ambulate effectively, as defined in 1.00B2b . . . ." 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.02B. In fact, at a

consultative examination in January 2015, Markham ambulated without difficulty and without an assistive device, doc. 5-11 at 60, 63, and Markham denied having difficulty walking at an examination on August 31, 2015, doc. 5-13 at 9. Since that time, Dr. Claussen completed an application for disability parking permit for Markham, indicating that Markham is "severely limited in his ability to walk," doc. 5-8 at 54, and Dr. Ballard prescribed a cane to assist Markham as he walked, doc. 5-4 at 52. However, the use of a single cane to walk does not show that Markham has an "inability to ambulate effectively as defined in 1.00B2b." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1) (defining ineffective ambulation as "insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held device(s) that limits the functioning *of both upper extremities* . . . .") (emphasis added). Thus, Markham does not meet Listing 1.02A, which deals with dysfunction of a major peripheral weight-bearing joint. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A.

In addition, Markham did not present sufficient evidence to show that his shoulder impairments meet Listing 1.02B, which deals with dysfunction of a major peripheral joint in each upper extremity. *See id.* at § 1.02B. To meet Listing 1.02B, Markham must show an "inability to perform fine and gross movements effectively," *id.*, which the regulations define as "an extreme loss of function of *both* upper extremities," *id.* at § 1.00B2c (emphasis in original). Although

17

Markham experienced problems with both of his shoulders and arms, there is no evidence that Markham had an extreme loss of function of his left shoulder or arm that was expected to last for a continuous period of at least twelve months. Indeed, as mentioned above, Markham's January 2015 surgery on his left shoulder appears to have been successful, and there is no indication that he sought further treatment for pain or stiffness in his left shoulder. *See* docs. 5-11 at 74; 5-14 at 27-29. Markham fractured his left wrist when he fell in April 2016, but treating notes reveal he maintained "good grips" after the fracture, and his treating physician believed the fracture would require a cast for only four weeks. Doc. 5-8 at 68. Thus, there is nothing in Markham's medical records to suggest that he experienced a loss of function in his left shoulder or arm that would last for at least twelve months.

For the reasons described above, the court concludes that the ALJ correctly applied the law, and substantial evidence supports her conclusion that Markham failed to show that his medical impairments met or exceeded Listing 1.02. Accordingly, this portion of the ALJ's opinion is also due to be affirmed.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Markham is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching her decision. Therefore, the

Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 17th day of September, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE